IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| KARLA SMITH and HOLLY BLADEL, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>KIMBERLY KAY REYNOLDS, in her official capacity as GOVERNOR of State of Iowa, BETH TOWNSEND, in her official capacity as the DIRECTOR of IOWA WORKFORCE DEVELOPMENT, and the STATE OF IOWA,<br><br>    Defendants. | Case No.: 4:23-cv-00156<br><br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

COME NOW Plaintiffs, Karla Smith, and Holly Bladel, individually and on behalf of all other similarly situated Iowans, for their causes of action against Defendants Kimberly Kay Reynolds, in her official capacity, Beth Townsend in her official capacity, and the State of Iowa, respectfully state:

**PRELIMINARY STATEMENT**

1.    Faced with a once-in-a-century pandemic, mass layoffs, business closures, and soaring unemployment, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act in March 2020, codified at 15 U.S.C. § 9001, et seq.

2.    The CARES Act, in relevant part, sought to ease this economic distress by providing temporarily enhanced unemployment benefits, including cash payments to qualified recipients, extensions of time to receive benefits, and extensions of benefits to persons who would not be otherwise eligible.

3.      However, in May 2021, Governor Reynolds announced that Iowa Workforce Development would terminate the State's participation in these pandemic-related unemployment programs—all of which were wholly funded by the federal government—effective June 12, 2021, approximately twelve weeks before these programs were otherwise set to expire.

4.      Defendants' refusal to ensure continued access to federal pandemic-related unemployment benefits, deprived approximately 30,000 Iowans, including Plaintiffs, of life-sustaining benefits to which they were otherwise entitled.[1] According to some estimates, the number of affected Iowans may exceed 55,000.[2]

5.      Defendants' decision to prematurely terminate these programs violated clear legislative mandates and constituted an unlawful exercise of executive authority. Plaintiffs seek to remedy these illegal acts and ask the Court to declare Defendants' actions unlawful, order the benefit payments under the programs at issue, and award other such relief the Court deems appropriate.

## Parties and Jurisdiction

6.      The Plaintiffs are current or former residents of the State of Iowa and bring this action on behalf of themselves and other similarly situated current or former residents of Iowa for declaratory and injunctive relief and to recover pandemic-related unemployment benefit payments

---

[1] *See* National Employment Law Project, *Policy and Data Brief: 4.7 million Workers Face Premature Cutoff of Pandemic Unemployment Programs*, (June 23, 2021), *available at* https://www.nelp.org/publication/4-7-million-workers-face-premature-cutoff-of-pandemic-unemployment-programs. Since publication, the authors have updated their data to reflect updated reports from states to the U.S. Department of Labor. The updated date is available at https://www.nelp.org/wp-content/uploads/Cutoff-States-Data-6-26-2021-Continued-Claims-All-Programs.pdf.
[2] *See* Andrew Stettner & Ellie Kaverman, The Century Foundation, State Unilateral Action to Cut off Federal Benefits: Workers Impacted and Federal Dollars Lost (last updated July 29, 2021), *available at* https://docs.google.com/spreadsheets/d/1mYzTHhMUOWbW4vBGB0Ia1Vt14mCK SV8aF04ldfsk3HU/edit#gid=174506757.

and interest thereon from the State of Iowa, liquidated damages, attorney fees and costs under the provisions of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act and Iowa Code 96 Employment Security—Unemployment Compensation.

7.    All Plaintiffs are citizens of the United States and residents of the State of Iowa.

8.    All Plaintiffs are current or former residents of the State of Iowa, and have been improperly denied pandemic-related unemployment benefit payments by Defendants as residents that are entitled to receive such payments under the provisions of the CARES Act and Iowa Code 96 Employment Security—Unemployment Compensation.

9.    The other similarly situated individuals represented by the named Plaintiffs are current or former residents of the State of Iowa, who have been improperly denied pandemic-related unemployment benefit payments by Defendants as residents that are entitled to receive such payments under the provisions of the CARES Act and Iowa Code 96 Employment Security—Unemployment Compensation.

10.    At all times pertinent herein, Defendant Kimberly Kay Reynolds, was and is the Governor of the State of Iowa and a resident of Des Moines, Polk County, Iowa.

11.    At all times pertinent herein, Defendant, Beth Townsend, was and is the Executive Director of Iowa Workforce Development and a resident of Dallas County, Iowa.

12.    The State of Iowa is a governmental entity within the territorial jurisdiction of this Court, having its principal office and its place of business located in Des Moines, Polk County, Iowa.

13.    Jurisdiction is conferred on the Court for the resolution of federal and constitutional questions pursuant to 28 U.S.C. § 1331.

14.     In this case, this Court has jurisdiction over this matter under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, which provides redress for constitutional violations.

15.     This action also seeks declaratory judgment, injunctive relief, and supplemental relief pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57 and 65.

16.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

17.     The amount in controversy in this matter exceeds $75,000.00, the jurisdictional requirement for this Court.

18.     Venue this District is proper as this action is brought against the Defendants Reynolds, Townsend, and the State of Iowa, a governmental entity with its principal place of business located in Polk County, Des Moines, Iowa.

### Named Parties

19.     Plaintiffs Karla Smith and Holly Bladel, bring this lawsuit as a class action under Chapter 96 Employment Security—Unemployment Compensation Law, Iowa Code § 96.1 et seq., to recover unpaid pandemic-related benefits owed to themselves and similarly situated current and former residents of the State of Iowa.

20.     Plaintiff, Karla Smith, is a resident of the State of Iowa and lives in Pleasantville, Iowa.

21.     Prior to Defendants' termination of benefits, she received PEUC benefits in the amount of $408/week per week in addition to the FPUC benefit to pay for food, housing, and other monthly expenses.

22.     Plaintiff Karla Smith is a retiree who took a job at Casey's to make ends meets in in the months just before the COVID-19 pandemic.

23.     However, at a doctor's appointment in mid-March 2020, Plaintiff Karla Smith's doctor told her that her preexisting lung condition made it dangerous for her to continue working in a retail setting. At the time, the store where Plaintiff's Karla Smith worked had not installed an Plexiglas dividers and did not require masks.

24.     Plaintiff Karla Smith followed her doctor's medical restriction and quit her job at Casey's to self-quarantine because of her high risk for COVID-19.

25.     The federal pandemic-related unemployment benefits allowed her to pay for food and other monthly expenses while she waited for her doctor to authorize a return to work.

26.     Defendants' decision to terminate PEUC and FPUC left Plaintiff Karla Smith without a critical income source just as the Delta variant surged.

27.     Plaintiff, Holly Bladel, is a resident of Iowa and lives in Clinton, Iowa.

28.     Plaintiff Holly Bladel worked for a restaurant and gas station but asked for time off to care for an elderly family member who was immunocompromised and at risk for COVID-19. Her employer later replaced her.

29.     Plaintiff Holly Bladel began receiving PUA and FPUC benefits, which allowed her pay for food and other monthly expenses. However, like many other Iowans, these benefits ended in June 2021.

30.     Plaintiff Holly Bladel wanted to return to work but first needed to ensure the safety of her immunocompromised family members.

31.     Defendant Kimberly Kay Reynolds, sued in this action in her official capacity, is the current Governor of the State of Iowa, which oversees Iowa Workforce Development, the administration of unemployment benefits, and the disbursement of federal funds. As the Governor of the State of Iowa, it is the responsibility of Defendant Governor Reynolds to put into effect

proper procedures for and to require proper payment of unemployment and pandemic-related unemployment benefits to the residents of Iowa and otherwise comply in this regard with both state and federal law.

32.     Defendant Beth Townsend, sued herein in her official capacity is the Director of Iowa Workforce Development. As the Director of Iowa Workforce Development, it is the responsibility, obligation, and duty of Defendant Townsend to put into effect proper procedures for and to require proper payment of unemployment and pandemic-related unemployment benefits to the residents of Iowa and otherwise comply in this regard with both state and federal law.

33.     The State of Iowa is a governmental entity, within the territorial jurisdiction of this Court, having its principal office and its place of business located in Des Moines, Polk County, Iowa. It is the responsibility, obligation, and duty of the State of Iowa to put into effect procedures for and to require proper payment of unemployment and pandemic related unemployment benefits to the residents of Iowa and otherwise comply in this regard with both state and federal law.

34.     Plaintiffs have exhausted their administrative remedies and/or demonstrated that exhaustion would be futile.

35.     On November 4, 2021, Plaintiff, Karla Smith, submitted a Petition for a Declaratory Order to Iowa Workforce Development pursuant to Iowa Code § 17.A.9(5)(d), seeking a determination of her statutory unemployment benefits rights.

36.     In a letter dated December 22, 2021, Iowa Workforce Development declined to issue a declaratory order.

37.     The letter stated that "[t]he petition is not based on facts calculated to aid in the planning of future conduct but is, instead, based solely upon prior conduct in an effort to establish the effect that conduct or to challenge an agency decision already made."

38.     The letter further stated that "[t]his decision constitutes final agency action on the petition."

39.     Based on this letter and the agency's reasoning, any other claimant would receive the same result.

40.     Accordingly, based on this letter, requests for further agency review and/or action for any other putative Classes and Class members would be futile.

41.     Plaintiff, Karla Smith also filed a state tort claim with the State Appeal Board on February 17, 2022.

42.     As of the date of this filing—nearly fifteen (15) months later—no action had been taking on this state tort claim.

43.     Based on this lack of action, any other claimant would receive the same result.

44.     Accordingly, requests for further action from the State Appeal Board for any other putative Classes and Class members would be futile.

## **General Allegations**

45.     The Social Security Act provides federal funding to the states to implement their unemployment compensation programs. 42 U.S.C. § 501, et seq.[3]

46.     In particular, the Social Security Act creates the Unemployment Trust Fund, through which unemployment funds flow to the states. *See* 42 U.S.C. § 1101, et seq.

47.     However, the Unemployment Trust Fund does not contain financial resources.[4]

---

[3] Sections 501, et seq., and 1101, et seq., of Title 42 of the U.S. Code, are, respectively, codifications of Sections 301, et seq., and 901, et seq., of the Social Security Act. For ease of citation, this Petition uses the U.S. Code provisions.
[4] *See* Julie M. Whittaker, Cong. Research Service., RS22077, Unemployment Compensation (UC) and the Unemployment Trust Fund (UTF): Funding UC Benefits 3 (2020) (hereinafter "Funding UC Benefits")

48.     Instead, the money needed to pay benefits and administrative costs comes either from taxation (such as state and federal unemployment taxes on employers) or borrowing (either one account from another within the Fund or from intra-governmental transfers). Funding UC Benefits, at 3.

49.     "However, during recessions, current state unemployment tax receipts and the state account reserve balance may be insufficient to cover expenditures for the states UC benefits. Thus, the state UTF accounts may require an advance (or loan) to pay for state UC benefits." *Id.* at 6.

50.     In these situations, "federal law also authorizes the federal accounts to borrow funds from each other or from the general fund if balances in the federal accounts are insufficient to cover their expenditures." *Id.*

51.     More specifically, the Social Security Act provides that certain trust fund accounts may borrow from the general fund to cover insufficient balances. *Id.* at 7.

52.     The Employment Security Administration Account, which provides administrative grants to states, may borrow from the general fund if state unemployment administrative costs exceed that account's balance. 42 U.S.C. § 1101(e)(2).

53.     The Extended Unemployment Compensation Account, which provides extended benefits during periods of high unemployment, is authorized to borrow funds from the general fund when extended benefit costs exceed the account balance. 42 U.S.C. § 1105(d).

54.     The Social Security Act also authorizes the Federal Unemployment Account to borrow from the general fund to provide loans to states. 42 U.S.C. § 1323.

55.     In May 2020, the Federal Unemployment Account already had begun such borrowing as states rapidly depleted their Unemployment Trust Fund Accounts. Funding UC Benefits, at 7.

56.     The Social Security Act also vests the U.S. Department of Labor with the authority to oversee each state's implementation of its unemployment compensation program. *See generally* 42 U.S.C. § 501, et seq.; 20 C.F.R. § 601, et seq.

57.     Among its other provisions, the Social Security Act requires that the implementing state's laws provide for "[s]uch methods of administration . . . as are found by the Secretary of Labor to be reasonably calculated *to insure full payment of unemployment compensation when due.*" 42 U.S.C. § 503(a)(1) (emphasis added).

58.     In addition to administering applicable statutes, the Department of Labor provides policy guidance to states though Unemployment Insurance Program Letters.[5]

59.     The Federal Unemployment Tax Act supplements the unemployment insurance eligibility provisions of the Social Security Act. *See* 26 U.S.C. § 3304.

60.     Iowa Workforce Development administers Iowa's unemployment insurance program in compliance with the Social Security Act, the Federal Unemployment Tax Act, and other related federal laws. *See* Iowa Code § 96.1 et seq.,

61.     On January 27, 2020, the U.S. Secretary of Health and Human Services declared a COVID-19 public health emergency. *See* U.S. Dep't Health & Humans Servs., Determination that a Public Health Emergency Exists. (2020).

62.     The COVID-19 pandemic and efforts to contain it caused unemployment rates to soar nationwide across all sectors of the U.S. economy. In April 2020, the unemployment rate rose by 10.3 percentage points, leaving 14.7 percent of Americans—approximately 23.1 million

---

[5] *See, e.g.*, U.S. Dep't of Labor, UIPL No. 16-20, Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020—Pandemic Unemployment Assistance (PUA) Program Operating, Financial, and Reporting Instructions (Apr. 5, 2020), *available at* https://wdr.doleta.gov/directives/attach/UIPL/UIPL_16-20.pdf.

people—unemployed. *See* Bureau of Labor Statistics, USDL-20-0815, Employment Situation New Release (May 8, 2020). According to the Department of Labor, the country had not seen a one-month increase of that magnitude since 1948. *See id.* Pew Research Center reported that "[t]he rise in the number of unemployed workers due to COVID-19 is substantially greater than the increase due to the Great Recession, when the number of unemployed increased by 8.8 million from the end of 2007 to the beginning of 2021."[6] In fact, "the COVID recession is comparable more to the Great Depression of the 1930s, when the unemployment rate is estimated to have reached 25%."[7]

63.     In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, to "deliver relief for the American people and to recover th[e] economy—get back the strong economy that we had," including "very strong unemployment compensation additions to the present program." 166 Cong. Rec. S2021 (daily ed. Mar. 25, 2020) (statement of Sen. Grassley).

64.     The CARES Act was signed into law on March 27, 2020, Pub. L. 116-136, and is codified at 15 U.S.C. § 9000, et seq.

65.     Title II of the CARES Act, titled "Relief for Workers Affected by the Coronavirus Act," provided temporarily enhanced unemployment insurance benefits for workers affected by the COVID-19 pandemic.

66.     The temporarily enhanced unemployment benefits included:

---

[6] Rakesh Kochhar, Pew Research Center, Unemployment rose higher in three months of COVID-19 than it did in two years of the great recession (June 11, 2020), *available at* https://www.pewresearch.org/fact-tank/2020/06/11/unemployment-rose-higher-in-three-months-of-covid-19-than-it-did-in-two-years-of-the-great-recession/.
[7] *Id.*

    a. **Pandemic Unemployment Assistance ("PUA")**, which extended assistance to workers who were not eligible for regular unemployment benefits and whose unemployment was caused by COVID-19. 15 U.S.C. § 9021.[8]

    b. **Pandemic Emergency Unemployment Compensation ("PEUC")**, which extended regular unemployment compensation benefits to workers who had exhausted unemployment insurance benefits. 15 U.S.C. § 9023.

    c. **Federal Pandemic Unemployment Compensation ("FPUC")**, which increased the amount of unemployment insurance benefits by $600 per week from March 27, 2020, though July 31, 2020. 15 U.S.C. § 9023.[9]

67.     Congress reauthorized these CARES Act benefits as the pandemic stretched beyond the original sunset dates for the program. On December 26, 2020, the Continued Assistance for Unemployed Workers Act of 2020 extended these benefits through March 14, 2021. Pub. L. No. 116-260, §§ 200-01, 203, 206. Then, on March 11, 2021, the American Rescue Plan Act of 2021 extended the benefits through September 6, 2021. Pub. L. No. 117-2, §§ 9011, 9013, 9016.

68.     The unemployment benefits provided under the CARES Act are conferred and funded by the Unemployment Trust Fund created under the Social Security Act. *See* 15 U.S.C. §§ 9021(g)(1)–(2) (incorporating 42 U.S.C. §§ 1101(a), 1104(a), and 1105(a)); 15 U.S.C. 9023(d), 9025(d)(1)–(2) (incorporating 42 U.S.C. §§ 1101(a), 1104(a), and 1105(a)).

---

[8] These workers included those who: had been diagnosed with COVID-19, were providing care for a family member diagnosed with COVID-19, were primary caregivers for a school-aged child whose school had closed due to COVID-19, were advised to self-quarantine by a heath care provider, or were working for an employer who closed due to COVID-19, among others. *See* 15 U.S.C. § 9021(a)(3)(A)(ii)(I)–(II).

[9] Subsequent reauthorizations changed that amount to $300 per week.

69.     Through these provisions, the federal government pays the full benefit amounts of PUA, PEUC, and FPUC benefits *and* all administrative expenses related to the programs and transfers this money to the states via the Unemployment Trust Fund. 15 U.S.C. §§ 9021(f)(2) (PUA), 9023(d)(1)(A) (FPUC, 9025(c)(1), (d)(2) (PEUC).[10]

70.     The provisions governing PUA and PEUC benefits provide that payments to states for compensation are funded through "the extended unemployment compensation account (as established by section 905(a) of the Social Security Act (42 U.S.C. 1105(a)) of the Unemployment Trust Fund (as established by section 904(a) of Such Act (42 U.S.C. 1104(a))." 15 U.S.C. §§ 9021(g)(1)(A) (PUA benefits); 15 U.S.C. § 9025(d)(1)(A) (PEUC benefits).

71.     These funds are then replenished from the general fund of the U.S. Treasury in "such sums as the Secretary of Labor estimates to be necessary to make the payments described in subparagraph (A)." 15 U.S.C. §§ 9021(g)(1)(B) (PUA benefits); 15 U.S.C. § 9025(d)(1)(B) (PEUC benefits).

72.     The administrative funding provisions are nearly identical except that the funding comes from the employment security administration account—which funds the administrative costs for all unemployment insurance programs—and is replenished from the general fund as necessary. *See* 15 U.S.C. §§ 9021(g)(2)(A)–(B) (PUA benefits); 15 U.S.C. § 9025(d)(2)(A)–(B) (PEUC benefits).

---

[10] The PUA benefits, including FPUC and administration costs, are funded by 42 U.S.C. §§ 1104(a) and 1105(a). 15 U.S.C. § 9021(g). The PEUC benefits, including FPUC, are funded by 42 U.S.C. §§ 1104(a) and 1105(a), while PEUC administration costs are funded by 42 U.S.C. § 1101(a). 15 U.S.C. § 9025(d).

73.     With respect to FPUC benefits, Section 2104 of the CARES Act provides that FPUC benefits provide a flat dollar increase to regularly weekly unemployment benefits under the Social Security Act. 15 U.S.C. § 9024(b); *see also* 15 U.S.C. § 9023(i).

74.     The terms and conditions of state laws that apply to claims for and payment of regular unemployment insurance benefits—including appeal procedures, overpayments, fraud determinations, and work availability, or work search requirements—also apply to PUA, PEUC, and FPUC benefits. *See, e.g.*, 15 U.S.C. § 9021(c)(5)(B)(ii); 9023(a)(4)(B); *see also* U.S. Dep't of Labor, UIPL No. 23-20, Program Integrity for the Unemployment Insurance (UI) Program and the UI Programs Authorized by the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020) (May 11, 2020), *available at* https://wdr.doleta.gov/directives/attach/UIPL/UIPL_23-20.pdf.

75.     For example, the U.S. Department of Labor has instructed states that the unemployment benefits under the CARES Act are nondiscretionary and must be promptly paid to an individual who is determined eligible. *See* U.S. Dep't of Labor UIPL Nos. 16-20, 23-20.

76.     Pursuant to the terms of the CARES Act, states nationwide entered into agreements with the U.S. Department of Labor to implement CARES Act benefits.

77.     These agreements provide, in part that "The [state unemployment] Agency will apply the methods of administration required by section 303(a)(1) of the Social Security Act (42 U.S.C. 503(a)(1)) to the functions undertaken pursuant to this agreement." Agreement Implementing the Relief for Workers Affected by Coronavirus Act, Sec. X.

78.     Iowa entered into an agreement with the U.S. Department of Labor to implement PUA, PEUC, and FPUC benefits effective March 29, 2020.[11]

79.     Iowa implemented these CARES Act benefits through Iowa Workforce Development through the existing state statutory and regulatory scheme with guidance from the U.S. Department of Labor.[12]

80.     Prior to the termination of benefits, the Iowa Legislature had not enacted any statutes related to PUA, PEUC, or FPUC benefits. *See* The Iowa Legislature, Enrolled Bills, General Assembly 89th Session (01/11/2021–01/09/2022), *available at* https://www.legis.iowa.gov/law/statutory/acts/enrolledBills?year=2021.

81.     At all times relevant hereto, Plaintiffs have been or are residents of the State of Iowa eligible for pandemic-related unemployment benefits.

82.     Plaintiffs received eligibility letters setting forth their eligibility to PUA, PEUC, and FPUC benefits.

83.     These eligibility letters further stated that these benefits would continue through September 4, 2021.[13]

---

[11] *See* Press Release, Iowa Workforce Development, Iowa Workforce Development outlines CARES Act benefits and implementation, (April 6, 2020), *available at* https://www.iowaworkforcedevelopment.gov/iowa-workforce-development-outlines-cares-act-benefits-and-implementation.
[12] *See id.*
[13] Although the CARES Act programs expired on September 6, 2021, Iowa unemployment claims weeks end on Saturdays, making September 4, 2021 the final day for the programs in Iowa.

84.     In a Memorandum to Defendant Reynolds dated May 10, 2021, Defendant Townsend recommended terminating Iowa's participation in the PUA, PEUC, and FPUC programs effective June 12, 2021.[14]

85.     The next day, March 11, 2021, Defendant Reynolds officially adopted this recommendation and announced that Iowa would end its participation in the PUA, PEUC, and FPUC programs effective June 12, 2021.[15]

86.     Plaintiffs were not given a hearing or opportunity to be heard on the denial of these benefits.

87.     Some Plaintiffs did not even receive formal notice of the taking of their benefits.

88.     Instead, these Plaintiffs received notice from news reports.

89.     For example, less than a week before Defendants' early termination of the CARES Act programs, Plaintiff Karla Smith learned that her benefits would be ending while watching the news on KCCI-Channel 8.

90.     Other Plaintiffs received a recorded notice regarding the Defendants' decision to end participation in CARES Act programs when filing weekly benefit.

91.     This recording did not explain how the decision would affect individual claimants.

92.     This recording did not provide an opportunity for hearing or appeal.

93.     Some, but not all, Plaintiffs received a form letter regarding the Defendants' decision to end participation in CARES Act programs.

---

[14] Memorandum from Beth Townsend, Director, Iowa Workforce Development to Governor Kim Reynolds (May 10, 2021), *available at* https://www.iowaworkforcedevelopment.gov/sites/search. iowaworkforcedevelopment.gov/files/content-files/2021-05-10%20-%20MEMORANDUM.pdf.
[15] News Release, Iowa Workforce Development, Iowa to end participation in federal unemployment benefit programs, citing strong labor market and recovering economy (May 11, 2021), *available at* https://www.iowaworkforcedevelopment.gov/iowa-end-participation-federal-unemployment-benefit-programs-citing-strong-labor-market-and.

94.     Plaintiff Holly Bladel received such a letter.

95.     These letters stated "Effective June 12th 2021 the state of Iowa will end its participation in federal pandemic-related unemployment programs."

96.     However, the form letter did not explain how the decision would affect individual claimants.

97.     This form letter did not provide any information as to an opportunity for appeal or hearing.

98.     In fact, the form letter specifically instructed claimants **_not_** to call Iowa Workforce Development unless they needed assistance filing unemployment claims.

99.     The Plaintiffs have not received any PUA, PEUC, or FPUC benefits for the periods of unemployment after June 12, 2021.

100.    Defendants' termination of these pandemic related benefits have left Plaintiffs unable to cover basic living expenses such as housing, utilities, food, health care, and child care.

### **Class Allegations**

101.    Plaintiffs reallege and incorporate by reference herein all the allegations contained paragraphs 1–100 and 151–205 as if stated herein.

102.    Pursuant to Federal Rule of Civil Procedure 23(b)(3), Plaintiff's assert claims on behalf of the following classes:

### ***PUA Recipients Class***

103.    Plaintiffs bring Counts as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and as the Class Representatives of the following persons (the "PUA Recipients Class"):

> All current and former residents of the State of Iowa who
> would have been eligible to receive Pandemic

Unemployment Assistance benefits between June 13, 2021, and September 6, 2021.

104.     The claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the PUA Recipients Class.

105.     This action has been brought and may be properly maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23(b)(3). Plaintiffs seek to represent ascertainable Classes, as determining inclusion in the classes can be done through Iowa Workforce Development's own records.

106.     Although the precise number of Class members is unknown and can only be determined through appropriate discovery, the proposed PUA Recipients Class satisfies the numerosity standard as it consists of at least hundreds of persons who are geographically dispersed and, therefore, joinder of all members of the PUA Recipients Class in a single action is impracticable.

107.     Questions of fact and law common to the PUA Recipients Class predominate over any questions affecting only individual members. The questions of law and fact common to the PUA Recipients Class arising from Defendants' actions include, without limitation:

a.       Whether Defendant failed to pay PUA benefits to members of the PUA Recipients Class as required by the CARES Act;

b.       Whether Defendants' failure to PUA benefits for the period between June 12, 2021, and September 6, 2021 violated Chapter 96 of the Iowa Code;

c.       Whether Defendants' termination of PUA benefits prior to September 6, 2021, constituted an unlawful exercise of legislative authority;

     d.     Whether Defendants' termination of PUA benefits prior to September 6, 2021 was an unlawful seizure of property in violation of the Fifth Amendment of the United States Constitution;

     e.     Whether Defendants seized the property of PUA recipients without just compensation as guaranteed under the Fifth Amendment of the United States Constitution;

     f.     Whether Defendants failed to provide proper notice and due process for the termination of PUA benefits prior to September 6, 2021.

108.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

109.     Plaintiff's claim is typical of those of the PUA Recipients Class in that:

     a.     Plaintiffs and the PUA Recipients Class were subject to the same PUA benefit eligibility requirements under the CARES Act;

     b.     Plaintiffs and the PUA Recipients Class are current and former residents of Iowa eligible for PUA benefits under the terms of the CARES Act;

     c.     Defendants have not paid Plaintiffs and the PUA Recipients Class PUA benefits for periods after June 12, 2021;

110.     Plaintiff(s) is/are (a) member(s) of the putative Class.

111.     The claims asserted by the Plaintiff(s) in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendants and the relief sought is common.

112.    Plaintiff are adequate representatives of the PUA Recipients Class because they are members of the PUA Recipients Class and their interests do not conflict with the interests of the members of the PUA Recipients Class they seek to represent.

113.    The interests of the members of the PUA Recipients Class will be fairly and adequately represented as Plaintiffs have retained counsel competent and experienced in complex wage and hour, employment, unemployment, and class action litigation.

114.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the PUA Recipients Class.

115.    Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the PUA Recipients Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the PUA Recipients Class, and there are no material difficulties impairing the management of a class action. A class action will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

116.    It would be impracticable and undesirable for each member of the PUA Recipients Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent

adjudications, while a single class action can determine, with judicial economy, the rights of all PUA Recipients Class members.

117.    Certification of the Class is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, it would be unlikely that many members of the Class would be able to protect their own interest because the cost of litigation through individual lawsuits would exceed the cost of recovery.

118.    In the alternative, the Class should be certified because:

    a.    The prosecution of separate actions by the individual members of the proposed class would create risk of inconsistent adjudication, which could establish incompatible standards of conduct for Iowa Workforce Development;

    b.    The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

    c.    Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed class as a whole.

### *PEUC Recipients Class Allegations*

119.   Plaintiffs bring Counts as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and as the Class Representatives of the following persons (the "PEUC Recipients Class"):

> All current and former residents of the State of Iowa who would have been eligible to receive Pandemic Emergency Unemployment Compensation benefits between June 13, 2021, and September 6, 2021.

120.   The claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the PEUC Recipients Class.

121.   This action has been brought and may be properly maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23(b)(3). Plaintiffs seek to represent ascertainable Classes, as determining inclusion in the classes can be done through Iowa Workforce Development's own records.

122.   Although the precise number of Class members is unknown and can only be determined through appropriate discovery, the proposed PEUC Recipients Class satisfies the numerosity standard as it consists of at least hundreds of persons who are geographically dispersed and, therefore, joinder of all members of the PEUC Recipients Class in a single action is impracticable.

123.   Questions of fact and law common to the PEUC Recipients Class predominate over any questions affecting only individual members. The questions of law and fact common to the PEUC Recipients Class arising from Defendants' actions include, without limitation:

> a.   Whether Defendant failed to pay PEUC benefits to members of the PEUC Recipients Class as required by the CARES Act;

b. Whether Defendants' failure to PEUC benefits for the period between June 12, 2021, and September 6, 2021 violated Chapter 96 of the Iowa Code;

c. Whether Defendants' termination of PEUC benefits prior to September 6, 2021, constituted an unlawful exercise of legislative authority;

d. Whether Defendants' termination of PEUC benefits prior to September 6, 2021 was an unlawful seizure of property in violation of the Fifth Amendment of the United States Constitution;

e. Whether Defendants seized the property of PEUC recipients without just compensation as guaranteed under the Fifth Amendment of the United States Constitution;

f. Whether Defendants failed to provide proper notice and due process for the termination of PEUC benefits prior to September 6, 2021.

124. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

125. Plaintiff's claim is typical of those of the PEUC Recipients Class in that:

a. Plaintiffs and the PEUC Recipients Class were subject to the same PEUC benefit eligibility requirements under the CARES Act;

b. Plaintiffs and the PEUC Recipients Class are current and former residents of Iowa eligible for PEUC benefits under the terms of the CARES Act;

c. Defendants have not paid Plaintiffs and the PEUC Recipients Class PEUC benefits for periods after June 12, 2021;

126.    Plaintiff(s) is/are (a) member(s) of the putative Class.

127.    The claims asserted by the Plaintiff(s) in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendants and the relief sought is common.

128.    Plaintiffs are adequate representatives of the PEUC Recipients Class because they are members of the PEUC Recipients Class and their interests do not conflict with the interests of the members of the PEUC Recipients Class they seek to represent.

129.    The interests of the members of the PEUC Recipients Class will be fairly and adequately represented as Plaintiffs have retained counsel competent and experienced in complex wage and hour, employment, unemployment, and class action litigation.

130.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the PEUC Recipients Class.

131.    Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the PEUC Recipients Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the PEUC Recipients Class, and there are no material difficulties impairing the management of a class action. A class action will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

132.     It would be impracticable and undesirable for each member of the PEUC Recipients Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all PEUC Recipients Class members.

133.     Certification of the Class is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, it would be unlikely that many members of the Class would be able to protect their own interest because the cost of litigation through individual lawsuits would exceed the cost of recovery.

134.     In the alternative, the Class should be certified because:

    a.  The prosecution of separate actions by the individual members of the proposed class would create risk of inconsistent adjudication, which could establish incompatible standards of conduct for Iowa Workforce Development;

    b.  The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.  Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed class as a whole.

### *FPUC Recipients Class Allegations*

135.    Plaintiffs bring Counts as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of themselves and as the Class Representatives of the following persons (the "FPUC Recipients Class"):

> All current and former residents of the State of Iowa who would have been eligible to receive Federal Pandemic Unemployment Compensation benefits between June 13, 2021, and September 6, 2021.

136.    The claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the FPUC Recipients Class.

137.    This action has been brought and may be properly maintained as a class action as it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Rule 23(b)(3). Plaintiffs seek to represent ascertainable Classes, as determining inclusion in the classes can be done through Iowa Workforce Development's own records.

138.    Although the precise number of Class members is unknown and can only be determined through appropriate discovery, the proposed FPUC Recipients Class satisfies the numerosity standard as it consists of at least hundreds of persons who are geographically dispersed and, therefore, joinder of all members of the FPUC Recipients Class in a single action is impracticable.

139.    Questions of fact and law common to the FPUC Recipients Class predominate over any questions affecting only individual members. The questions of law and fact common to the FPUC Recipients Class arising from Defendants' actions include, without limitation:

a. Whether Defendant failed to pay FPUC benefits to members of the FPUC Recipients Class as required by the CARES Act;

b. Whether Defendants' failure to FPUC benefits for the period between June 12, 2021, and September 6, 2021 violated Chapter 96 of the Iowa Code;

c. Whether Defendants' termination of FPUC benefits prior to September 6, 2021, constituted an unlawful exercise of legislative authority;

d. Whether Defendants' termination of FPUC benefits prior to September 6, 2021 was an unlawful seizure of property in violation of the Fifth Amendment of the United States Constitution;

e. Whether Defendants seized the property of FPUC recipients without just compensation as guaranteed under the Fifth Amendment of the United States Constitution;

f. Whether Defendants failed to provide proper notice and due process for the termination of FPUC benefits prior to September 6, 2021.

140. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

141. Plaintiff's claim is typical of those of the FPUC Recipients Class in that:

a. Plaintiffs and the FPUC Recipients Class were subject to the same FPUC benefit eligibility requirements under the CARES Act;

b. Plaintiffs and the FPUC Recipients Class are current and former residents of Iowa eligible for FPUC benefits under the terms of the CARES Act;

      c.   Defendants have not paid Plaintiffs and the FPUC Recipients Class FPUC

          benefits for periods after June 12, 2021;

142.    Plaintiff(s) is/are (a) member(s) of the putative Class.

143.    The claims asserted by the Plaintiff(s) in this action are typical of the claims of the members of the putative Class, as the claims arise from the same course of conduct by the Defendants and the relief sought is common.

144.    Plaintiff are adequate representatives of the FPUC Recipients Class because they are members of the FPUC Recipients Class and their interests do not conflict with the interests of the members of the FPUC Recipients Class they seek to represent.

145.    The interests of the members of the FPUC Recipients Class will be fairly and adequately represented as Plaintiffs have retained counsel competent and experienced in complex wage and hour, employment, unemployment, and class action litigation.

146.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the FPUC Recipients Class.

147.    Maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the FPUC Recipients Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the FPUC Recipients Class, and there are no material difficulties impairing the management of a class action. A class action will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions

and the duplication of discovery, effort, expense, and the burden of the courts that individual actions would create.

148.    It would be impracticable and undesirable for each member of the FPUC Recipients Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all FPUC Recipients Class members.

149.    Certification of the Class is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, it would be unlikely that many members of the Class would be able to protect their own interest because the cost of litigation through individual lawsuits would exceed the cost of recovery.

150.    In the alternative, the Class should be certified because:

    a. The prosecution of separate actions by the individual members of the proposed class would create risk of inconsistent adjudication, which could establish incompatible standards of conduct for Iowa Workforce Development;

    b. The prosecution of individual actions could result in adjudications, which, as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

      c.   Defendants have acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed class as a whole.

## Count I: Unconstitutional Taking/Denial of Due Process (U.S. Constitution, Iowa Constitution, 42 U.S.C. § 1983)

151.    Plaintiffs reassert and re-allege paragraphs 1–150 and 179–205 as if fully set forth herein.

152.    Unemployment benefits are a matter of statutory entitlement.

153.    Plaintiffs had a property interest in their unemployment benefits.

154.    Plaintiffs received eligibility letters setting forth their eligibility to PUA, PEUC, and FPUC benefits.

155.    These eligibility letters stated that these benefits would continue through September 4, 2021.

156.    Plaintiffs had the right to their property, namely the PUA, PEUC, and FPUC benefits for which they had been determined eligible.

157.    Defendants took this property without due process as guaranteed by the Fifth Amendment of the United States Constitution (as enforced through 42 U.S.C. § 1983) and Article I, Sections 9 and 18 of the Iowa Constitution.

158.    Defendants unlawfully seized the property in violation of the Fifth Amendment of the United States Constitution (as enforced through 42 U.S.C. § 1983) and Article I, Sections 9 and 18 of the Iowa Constitution.

159.    Defendants took the property without just compensation as guaranteed under the Fifth Amendment of the United States Constitution (as enforced through 42 U.S.C. § 1983) and Article I, Sections 9 and 18 of the Iowa Constitution.

160.    Defendants seized the PUA, PEUC, and FPUC benefits that were due and owing to Plaintiffs.

161.    Plaintiff have been damaged by losing this property interest, liberty interest, and property value.

162.    Defendants took Plaintiffs' property for its own public use.

163.    No formal proceedings had concluded to allow it to happen.

164.    Plaintiffs were given no hearing nor opportunity to be heard.

165.    Some Plaintiffs did not even receive notice of the taking of their benefits.

166.    Instead, these Plaintiffs only learned that the pandemic programs were ending from news reports.

167.    Other Plaintiffs received a recorded notice regarding the Defendants' decision to end participation in CARES Act programs while filing their weekly unemployment claims.

168.    This recording did not explain how the decision would affect individual claimants.

169.    This recording did not provide an opportunity for hearing or appeal.

170.    Some, but not all, Plaintiffs received a form letter regarding the Defendants' decision to end participation in CARES Act programs.

171.    However, this form letter did not explain how the decision would affect individual claimants.

172.    This form letter did not provide any opportunity for appeal or hearing.

173. In fact, the form letter specifically instructed claimants _**not**_ to call Iowa Workforce Development unless they needed assistance filing claims.

174. The seizure of Plaintiffs' property is permanent.

175. Defendants had no legal right to take Plaintiffs' property.

176. Even if Defendants had legal right to take Plaintiff's property, Defendants owed Plaintiffs just compensation for the taking.

177. Defendants paid no compensation of any sort for the takings of Plaintiffs' property.

178. As a result of the above, Plaintiffs' have suffered damages.

WHEREFORE Plaintiffs and the PUA, PEUC, and FPUC Recipient Classes demand judgment against Defendant and pray for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count II: Violation of Iowa Code 96: Employment Security—Unemployment Compensation on Behalf of All Classes

179. Plaintiffs reassert and re-allege paragraphs 1–178 and 197–205 as if stated herein.

180. At all relevant times herein, Plaintiffs and the Classes have been entitled to the rights, protections, and benefits provided under the Iowa Code § 96.1, et seq.

181. Defendants' decision to end prematurely the receipt of federal benefits contravenes Chapter 96 of the Iowa Code, Employment Security—Unemployment Compensation ("Chapter 96"), which governs Iowa's unemployment insurance program.

182. During all times relevant to this action, Defendants were charged with the administration of Iowa's unemployment insurance program subject to the terms of Chapter 96.

183.     In Section 96.2, the Iowa Legislature set forth a guide to interpretation, which

speaks directly to the public policy at issue:

> Economic insecurity due to unemployment is a serious menace to
> the health, morals, and welfare of the people of this state.
> Involuntary unemployment is therefore a subject of general interest
> and concern which requires appropriate action by the legislature to
> prevent its spread and to lighten its burden which now so often falls
> with crushing force upon the unemployed worker and the worker's
> family. The achievement of social security requires protection
> against this greatest hazard of our economic life. This can be
> provided by encouraging employers to provide more stable
> employment and by the systematic accumulation of funds during
> periods of employment to provide benefits for periods of
> unemployment, thus maintaining purchasing power and limiting the
> serious social consequences of poor relief assistance. The
> legislature, therefore, declares that in its considered judgment the
> public good and the general welfare of the citizens of this state
> require the enactment of this measure, under the police powers of
> the state, for the compulsory setting aside of unemployment reserves
> to be used for the benefit of persons unemployed through no fault of
> their own.

Iowa Code § 96.2.

184.     To fulfill this public policy goal, the Legislature statutorily mandates that the State

of Iowa and Iowa Workforce Development:

> . . . **_shall_** cooperate with the United States department of labor to the
> **_fullest extent_** consistent with the provisions of this chapter, and
> **_shall_** take such action, through the adoption of appropriate rules,
> regulations, administrative methods, and standards, as may be
> necessary to secure to this state and its citizens **_all advantages
> available_** under the provisions of the Social Security Act that relate
> to unemployment compensation, the federal Unemployment Tax
> Act, the Wagner-Peyser Act, and the Federal-State Extended
> Unemployment Compensation Act of 1970.

Iowa Code § 96.11(10)(a) (emphasis added).

185.     The unemployment benefits under the CARES Act were conferred and funded by

and through the federal unemployment programs established under the Social Security Act and the

federal Unemployment Tax Act. *See* 15 U.S.C. §§ 9021(g), 9025(d), and 9023(d). These are the precisely the same federal statutes identified in Chapter 96.

186.    Iowa Code § 96.11(10)(a) requires Iowa Workforce Development to secure to the residents of the State of Iowa and to the unemployed in Iowa all the rights and benefits conferred under these statutes.

187.    Thus, the Legislature's mandate in Iowa Code § 96.11(10)(a) is an instruction to the Governor and the Director of Iowa Workforce Development to administer unemployment benefits available in the Unemployment Trust Fund. This mandate is no different than the Legislature's determinations as to other aspects of Iowa's system of unemployment insurance benefits, such as a claimant's period of eligibility, notice requirements, or the method for calculating a claimant's benefit amount.

188.    These provisions, as well as others in Chapter 96 of the Iowa Code, indicate that the Iowa Legislature has a clearly stated public policy that the State is to participate in programs funded by the Social Security Act and Unemployment Tax Act for the benefit of its citizens. Further, these statutory mandates directly contradict Defendant Townsend's assertion in ending pandemic benefits that "Iowa can elect to participate in some federal programs and not others."[16] Chapter 96 makes plain that, at least with respect to programs under the Social Security Act, that is not so.

189.    Accordingly, Defendants' decision to end prematurely PUA, PEUC and FPUC benefits violated Chapter 96.

---

[16] Memorandum from Beth Townsend, Director, Iowa Workforce Development to Governor Kim Reynolds (May 10, 2021), *available at* https://www.iowaworkforcedevelopment.gov/sites/search. iowaworkforcedevelopment.gov/files/content-files/2021-05-10%20-%20MEMORANDUM.pdf.

190.    Further, Defendants' actions were an unlawful overextension of executive authority and violates the executive's statutory duty to secure such benefits, comply with federal law, and cooperate with the Department of Labor to administer those benefits for Plaintiffs and the PUA, PEUC, and FPUC Recipient Classes.

191.    During all times relevant to this action, Plaintiffs and the PUA, PEUC, and FPUC Recipient Classes were entitled to pandemic-related unemployment benefits under the CARES Act.

192.    Defendants have violated Chapter 96 by failing to pay Plaintiffs and the PUA, PEUC, and FPUC Recipient Classes for pandemic-related benefits. Iowa Code § 96.11(10)(a).

193.    Defendants are not permitted by state law to withhold or divert any portion of the pandemic-related unemployment benefits of Plaintiffs of the PUA, PEUC, and FPUC Recipient Classes that are at issue in this suit.

194.    Plaintiff and the PUA, PEUC, and FPUC Recipient Classes are entitled to damages equal to the benefits owed under the terms of the CARES Act.

195.    Plaintiffs and the PUA, PEUC, and FPUC Recipient Classes are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

196.    Defendants are liable for Plaintiffs usual and necessary costs and attorneys' fees incurred in this action.

WHEREFORE Plaintiffs and the PUA, PEUC, and FPUC Recipient Classes demand judgment against Defendant and pray for: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

**Count III: Declaratory Judgment (Iowa Code Chapter 96, 28 U.S.C.  2201)**

197.    Plaintiffs reassert and re-allege paragraphs 1–196 as if stated herein.

198.    There exists a dispute over the rights, status, and legal relations between Plaintiffs and Defendants within the meaning of 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57.

199.    In particular, the dispute is whether under Chapter 96 of the Iowa Code on Employment Security—Unemployment Compensation, Defendants are required to secure all possible federal pandemic-related unemployment benefits available to unemployed Iowans that are conferred by the unemployment provisions of the Social Security Act.

200.    Plaintiffs and Defendants hold antagonistic claims that can only be resolved by a declaratory judgment.

201.    A declaratory judgment is needed to establish Plaintiffs' and Defendants' legal rights and obligations with respect to Defendants' early termination of CARES Act unemployment benefits.

202.    Disputes currently exist between the parties such that Plaintiffs seek a declaratory judgment wherein Defendants' obligations under Iowa Code § 96.2 and § 96.11(10)(a) are determined, the Plaintiffs' legal rights to federal pandemic unemployment benefits are declared, and any and all monies owed to Plaintiffs under the CARES Act are ordered to be paid.

203.    Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Plaintiffs and Classes hereby request the Court to declare the legal rights and obligations of the parties under Chapter 96 of the Iowa Code.

204.    Moreover, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Plaintiffs and Classes request a determination of all other legal rights and obligations of the parties in relation to any statutory benefits owed under Chapter 96 and the CARES Act, any violation of

law shown to have occurred, as it relates to the parties hereto and in relating to any legal theory, including but not limited to violations of Chapter 96 and such other legal theories as are shown to exist under facts and law.

205.    Further, pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57, Plaintiffs and Classes request such injunctive, supplemental, ancillary, and further relief as is appropriate.

WHEREFORE, Plaintiffs and Classes respectfully ask this Court to enter judgment as follows:

i.    Finding and declaring that Defendants' early termination of federal pandemic-related unemployment insurance benefits, including PUA, PEUC, and FPUC benefits, was invalid and of no force and effect because it violates Iowa Code § 96.1, et seq.;

ii.    Finding and declaring that Defendants' early termination of federal pandemic-related unemployment insurance benefits, including PUA, PEUC, and FPUC benefits, was an unjust taking of property without just compensation and without due process in violation of the Fifth Amendment of the U.S. Constitution and Article I, Sections 9 and 18 of the Iowa Constitution;

iii.    Finding and declaring that Plaintiffs are entitled federal pandemic-related unemployment insurance benefits, including PUA, PEUC, and FPUC benefits for the period between June 12, 2021 and September 6, 2021;

iv.    Injunctively requiring the State of Iowa to accept these benefits and provide them to the Class members to which they are entitled, or if already utilized for other purposes, injunctively ordering the State of Iowa to provide PUA, PEUC, and FPUC benefits to the class members to which it is entitled;

v.     Awarding attorneys fees, as provided by law;

vi.    Awarding costs, as provided by law; and

vii.   Granting Plaintiffs such further legal and equitable relief as the Court deems just and

appropriate.


Respectfully submitted,

By:    */s/ Bruce H. Stoltze, Jr.*
Bruce H. Stoltze, Jr. (AT0010694)
John Q. Stoltze (AT0013285)
Breanne A. Gilpatrick (AT0015256)
Stoltze Law Group, PLC
300 Walnut Street, Suite 260
Des Moines, Iowa  50309
Telephone: (515) 989-8529
Fax: (515) 989-8530
Email: bruce.stoltze.jr@stoltze.law
Email: john.stoltze@stoltze.law
Email: breanne.gilpatrick@stoltze.law
ATTORNEYS FOR PLAINTIFFS


ORIGINAL FILED.