IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| KARLA SMITH and HOLLY BLADEL, on behalf of themselves and others similarly situated, | ) ) ) | Case No. 4:23-cv-00156-SMR-SBJ |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER ON DEFEDANTS' MOTION TO DISMISS |
| | ) | |
| STATE OF IOWA, KIMBERLY KAY REYNOLDS, in her individual capacity and her official capacity as the Governor of Iowa, and BETH TOWNSEND, in her individual capacity and in her official capacity as the Director of Iowa Workforce Development, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs Karla Smith and Holly Bladel filed this putative class action lawsuit against the above-captioned state government officials. They maintain that the decision by Defendants to end enhanced unemployment insurance benefits made available by the federal government during the COVID-19 pandemic violated the United States Constitution, the Iowa Constitution, and Iowa state law. Plaintiffs claim that the decision by Defendants was unlawful regardless of the discretion provided to state officials in the federal law.

They argue that eligibility letters they received outlining their benefits under the federal government programs vested in them a constitutionally-protected property interest of which they could not be deprived without due process or just compensation. Plaintiffs further contend that the statute governing Iowa's unemployment insurance benefits compensation scheme requires state officials to obtain all benefits available to eligible Iowa residents. They seek a declaration that the decision to end participation in the programs was unlawful. Plaintiffs ask the Court to

1

order Defendants to obtain the funds from the federal government and provide them to eligible class members.

## I.     BACKGROUND

### A. Statutory Background

Shortly after the onset of the COVID-19 pandemic within the United States in March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). One primary component of the CARES Act was the creation of three temporary federal unemployment insurance benefit programs. Pandemic Unemployment Assistance ("PUA") extended benefits to workers who were unemployed due to the pandemic, but who had exhausted or were not otherwise eligible for regular unemployment insurance benefits. *See* 15 U.S.C. § 9021(3)(A) (defining a "covered individual" as someone who is available and able to work but is unemployed because of pandemic-induced circumstances specified in the statute). Pandemic Emergency Unemployment Compensation ("PEUC") extended regular unemployment insurance benefits to workers who had exhausted their regular unemployment insurance benefits. *Id*. § 9025(2) (permitting payment of unemployment insurance benefits to individuals who, among other eligibility restrictions, "have exhausted all rights to regular compensation" under state or federal law). Congress increased the amount of unemployment insurance benefits available to claimants by $600 per week through the Federal Pandemic Unemployment Compensation ("FPUC") program. *Id*. § 9023(b)(3)(i). Congress later extended the FPUC program, but changed the amount to $300 per week. *Id.* § 9023(b)(3)(ii).

The programs were extended from the duration set forth in the CARES Act, but all three expired on September 6, 2021. *Id*. § 9021(c)(1)(ii); § 9023(b)(3)(A)(ii); § 9025(g). Participation was optional for each state, allowing them to enter into an agreement with the United States

Department of Labor but withdraw from any of the programs with 30 days' notice. *Id.* § 9021(f)(1)(2) (providing that PUA benefits "shall be paid to each State which has entered into an agreement under this subsection"); § 9023(a)(1) (permitting a State "may enter into and participate in an agreement" for FPUC benefits and any State that is a party to an agreement may terminate the agreement "upon 30 days' written notice"); § 9025(a)(1) (same).

The federal government was responsible for paying the full amount of benefits due under the benefit programs, as well as all the overhead expenses associated with the administration of the programs. *Id.* § 9021(f)(2); § 9023(d)(1)(A); § 9025(c)(1).

The CARES Act unemployment insurance benefit programs were funded through the United States Treasury using funds that were not already appropriated. *See id.* § 9021(g)(1)(B); § 9023(d)(3); § 9025(d)(1)(B). The Secretary of the Treasury was directed to deposit monies from the general fund into the existing Unemployment Trust Fund[1] to facilitate payments to the states. *Id.* § 9021(g); § 9025(d). The funds were to be replenished from the general fund as directed by the Secretary for the Department of Labor. *Id.* § 9021(g)(1)(B); § 9025(d)(1)(B).

Eligibility for the pandemic-related benefits was subject to the same terms and conditions as ordinary unemployment insurance benefits under state law. This included appeal procedures, fraud and overpayment determinations, work availability, and search requirements. *Id.* § 9021(c)(5)(B)(ii); § 9023(f).

### B.   *Factual Background*

Smith received $408 per week in PEUC benefits in addition to the FPUC benefit. She is a retiree who worked at a convenience store in early 2020. Smith's doctor advised her that working

---

[1] The Unemployment Trust Fund is a fund established under the Social Security Act to hold funds deposited by the states from their own unemployment funds, which are then transferred by the Social Security Administration to the States. 42 U.S.C. § 1104.

with the public in a retail setting exposed her to increased danger due to a preexisting lung condition. The store where Smith worked did not have Plexiglass dividers or mask requirements during this time period. She followed her doctor's recommendation and resigned from her employer in order to quarantine. Smith avers that the pandemic-related unemployment insurance benefits permitted her to pay for food and other living expenses while she waited authorization from her doctor to return to work.

Bladel worked at a restaurant and gas station at the beginning of 2020, but requested time off from her two jobs so she could care for an elderly, immunocompromised family member. [ECF No. 11 ¶ 37]. She was later replaced by her employers. Bladel began receiving PUA and FPUC benefits, which she used to buy food and other expenses. She wanted to return to work but says she first needed to ensure the safety of her immunocompromised family members.

On November 4, 2021, Smith submitted a petition for declaratory order to Iowa Workforce Development[2] ("IWD") seeking a determination of her statutory rights to unemployment insurance benefits. *Id.* ¶ 45. On December 22, 2021, IWD declined to issue a declaratory order, writing in a letter that "[t]he petition is not based on facts calculated to aid in the planning of future conduct but is, instead, based solely upon prior conduct in an effort to establish the effect [of] that conduct or to challenge an agency decision already made." *Id.* ¶¶ 46–47. The letter stated that it constituted final agency action on the petition. *Id.* ¶ 48.

Smith also filed a state tort claim with the State Appeal Board on February 17, 2022. *Id.* ¶ 51. As of the date of filing of the Amended Complaint—approximately 20 months later—no action had been taken on her tort claim. She alleges that based on the lack of action by the State

---

[2] Iowa Workforce Development is a government agency in Iowa tasked with administering state laws "relating to unemployment compensation insurance, job placement and training, employment safety, labor standards, and workers' compensation." Iowa Code § 84A.1(1).

Appeal Board, there is no reason to believe that any other claimant filing a state tort claim would receive a different result, making exhaustion of remedies by putative class members futile.

The Amended Complaint alleges that Plaintiffs received letters setting forth their eligibility to PUA, PEUC, and FPUC benefits. *Id.* ¶ 92. These eligibility letters allegedly said that these benefits would continue through September 4, 2021.[3] *Id.* ¶ 93. Defendant Beth Townsend, the Director of IWD, sent a memorandum to Governor Kimberly Reynolds dated May 10, 2021, recommending that Iowa terminate its participation in the pandemic-related unemployment insurance benefit programs. *Id.* ¶ 94. Reynolds adopted this recommendation the following day, announcing that the state would end its participation in the PUA, PEUC, and FPUC programs effective June 12, 2021. *Id.* ¶ 95. Plaintiffs allege they were not given a hearing or opportunity to be heard on the denial of their benefits. They maintain that some claimants did not receive formal notice of the benefits termination at all. Instead, some learned about the decision from news reports. *Id.* ¶ 98.

Smith alleges that she did not learn about the termination of her benefits until one week before it was effective, while she was watching a television news program. Other claimants received a recorded notice regarding the decision to end participation in the CARES Act programs when they filed for their weekly unemployment insurance benefits. *Id.* ¶ 100. Plaintiffs allege that the recording did not explain how the decision would affect individual claimants or provide them with an opportunity for a hearing or appeal. *Id.* ¶¶ 101–02.

Bladel was among the claimants who received a letter regarding the decision to end participation in the programs. The letter stated that effective June 12, 2021, Iowa would "end its

---

[3] Despite Plaintiffs' sweeping legal position that these letters bestowed a constitutionally-protected property interest in the benefits, a copy of the letter was not attached to the pleadings.

participation in federal pandemic-related unemployment programs." *Id*. ¶ 105.  The Amended

Complaint alleges that the letter did not explain how the decision would affect individual

claimants.  The letter also did not provide any information regarding any opportunity for appeal or

hearing.  It specifically instructed claimants not to call IWD unless they needed assistance filing

unemployment insurance claims.  *Id*. ¶ 108.

Plaintiffs allege that they have not received any PUA, PEUC, or FPUC benefits since the

effective date of termination.  *Id*. ¶ 109.  They maintain that ending of these pandemic related

benefits have left them unable to cover basic living expenses such as housing, utilities, food, health

care, and child care.

## C.  Procedural Background

Plaintiffs brought this case as a putative class action naming the State of Iowa, Governor

Reynolds, and Townsend as Defendants.  Governor Reynolds and Townsend are sued in their

individual and official capacities.  Count I of the Amended Complaint alleges an unconstitutional

taking and a denial of due process arising from the decision to terminate the unemployment

insurance benefits.  Plaintiffs argue they had a property interest in their unemployment insurance

benefits because it was a statutory entitlement, relying on the date of September 4, 2021, contained

in the eligibility letters.  They argue that the decision to end the PUA, PEUC, and FPUC benefits

was a deprivation of property without due process and a taking without just compensation.

In Count II, Plaintiffs seek to bring a direct action under Iowa Code Chapter 96, which

regulates Iowa's unemployment insurance benefits compensation scheme.  They insist that the

decision to end receipt of the CARES Act unemployment insurance benefits violated Chapter 96.

The Amended Complaint alleges that the Iowa Legislature has statutorily mandated that state

officials must secure all advantages available to Iowa residents under the Social Security Act

related to unemployment compensation.  Plaintiffs further allege that the decision to end the pandemic-related benefits was an *ultra vires* use of executive authority and violated the executive's statutory duty to secure unemployment insurance benefits, comply with federal law, and cooperate with the United States Department of Labor to administer unemployment insurance benefits to Iowa residents.

And finally Count III of the Amended Complaint seeks a declaratory judgment establishing the parties' legal rights and obligations concerning the termination of Plaintiffs' benefits under the CARES Act.

Defendants move to dismiss the Amended Complaint for lack of jurisdiction and failure to state a claim.  [ECF No. 12].  They argue that the Court lacks jurisdiction over the constitutional claims brought against the State of Iowa and both individual Defendants in their official capacities. Defendants contend such claims are barred by the Eleventh Amendment.  Furthermore, they argue that the Amended Complaint fails to state a claim for constitutional violations against Defendants in their individual capacities.  According to the Motion to Dismiss, Count II fails because there is no private right of action under Chapter 96 which directs that any litigation under the statute is limited to the administrative judicial review process pursuant to Iowa law.  Defendants assert that the third and final claim in the Amended Complaint must be dismissed because there is no underlying legal violation permitting declaratory judgment and an injunction is improper when a party seeks only prospective relief.

Plaintiffs resist Defendants' arguments in support of the Motion to Dismiss.  They contend that the Amended Complaint pleads a plausible takings claim based on a denial of previously awarded benefits, which were also terminated without due process.  Plaintiffs reject Defendants' position that Chapter 96 lacks a private right of action, but insist that they have a cause of action

to seek relief under the law regardless.  Finally, they maintain that the Amended Complaint properly seeks declaratory and injunctive relief.  The parties requested oral argument on the Motion to Dismiss, but the Court concludes it is unnecessary.  *See* LR 7(c).

## II.   DISCUSSION

### A.  *Motion to Dismiss Standard*

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must accept as true all facts pled and grant all reasonable inferences drawn from the pleadings in favor of the nonmovant.  *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 721 (8th Cir. 2014) (citation omitted).  A complaint is not adequately pled if it contains "'naked assertions devoid of further factual enhancement.'" *Christopher v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

Under the Rule 8 standard, a plaintiff is required only to set forth a "short and plain statement of the claim" with sufficient facts to "show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To survive a motion to dismiss, the alleged facts "must be enough to raise a right to relief above the speculative level" by presenting claims that are facially plausible. *Iqbal*, 556 U.S. at 678 (citation omitted).  The plausibility standard is not a probability requirement, but requires that the pleading contain sufficient facts "to raise a reasonable expectation that discovery with reveal evidence" to support a violation.  *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570).

A plaintiff cannot base an entitlement to relief on merely "labels and conclusions." *Twombly*, 550 U.S. at 555. Accordingly, where a complaint pleads facts that are "consistent with"

liability of a defendant, but does not cross the line between possibility and plausibility, it fails to state a claim under Rule 12(b)(6). *Id.* at 557. Furthermore, when the factual allegations "could not raise a claim of entitlement to relief" regardless of their veracity, a complaint "must be dismissed." *Id.* at 570. A court may properly consider "documents necessarily embraced by the complaint," including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

### B. Section 1983

In Count I of the Amended Complaint, Plaintiffs allege that Defendants violated the Takings Clause and the Due Process Clause of the United States Constitution and the Iowa Constitution. It is brought pursuant to 42 U.S.C. § 1983 which provides a cause of action against any person acting under color of state law who violates rights secured by the United States Constitution or federal statute. Defendants argue that Count I should be dismissed for three reasons.

First, they argue that Plaintiffs cannot bring a claim pursuant to Section 1983 predicated on a state constitutional violation. Second, they contend that the State and the individual Defendants sued in their official capacities are not persons under Section 1983. Third, Defendants argue that Plaintiffs have not stated a claim for a violation of the Takings Clause or the Due Process Clause. And finally, they contend that the individual Defendants are at least entitled to qualified immunity on the constitutional claims.

### 1. Applicability of Section 1983 to State Law Claims

Plaintiffs assert a cause of action pursuant to Section 1983 on the grounds that the termination of benefits violated the Takings Clause and Due Process Clause under not only the

United States Constitution, but also the Iowa Constitution.  [ECF No. 11 at 33].  However, a plaintiff cannot maintain a cause of action pursuant to Section 1983 for alleged violations of rights protected under state law.  *Preston v. City of Pleasant Hill*, 642 F.3d 646, 650 (8th Cir. 2011) ("A plaintiff may not bring a state claim under the aegis of § 1983").  The plain language of the statute reflects that it applies only to violations of rights secured by federal constitutional and statutory law.  42 U.S.C. § 1983 (providing a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States).  Accordingly, courts have long-recognized that state laws cannot serve as a basis for a claim brought pursuant to Section 1983.  *See Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) (emphasizing that "violations of state laws, state-agency regulations, and . . . state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983").  Plaintiffs' response confusingly notes that a federal court may exercise supplemental jurisdiction over state law claims which "form the same case or controversy."  28 U.S.C. § 1367(a).  This is a correct statement of law, but it does not address the fact that a Section 1983 claim cannot be predicated on a violation of state law—even state constitutional law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (holding that a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" to state a claim under Section 1983).  Thus, to the extent that Plaintiffs assert Count I based on a violation of the Iowa Constitution, it must be dismissed for lack of jurisdiction.

### 2.   Eleventh Amendment Immunity

The Amended Complaint does not expressly identify which Defendants are named in the Section 1983 claim in Count I.  Elsewhere in the pleading, it avers that Governor Reynolds and Townsend are sued in their individual and official capacities.  [ECF No. 11 ¶¶ 40–42].  When a government official is sued in their official capacity it "is functionally equivalent to a suit against

the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, "the real party in interest in an official-capacity suit is the entity represented and not the individual officeholder." *Karcher v. May*, 484 U.S. 72, 78 (1987). The Supreme Court has concluded that an official capacity suit "is not a suit against the official but rather is a suit against the official's office" meaning that it "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 68–69 (1989) (citations omitted).

Relatedly, the Eleventh Amendment requires a State give its consent before it may be sued in federal court. U.S. Const. amend. XI. The Supreme Court has held that Section 1983 does not abrogate a State's sovereign immunity from money damages under the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 337–38 (1979). Only prospective injunctive relief is available against a state official under Section 1983. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("State officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief."). In the Amended Complaint, Plaintiffs acknowledge that the pandemic-related unemployment benefits at issue here expired on September 6, 2021. Thus, Defendants argue that there is no prospective relief that can be provided from the State.

Plaintiffs argue that Defendants' Eleventh Amendment argument is premised on a basic misunderstanding of the nature of their claims. Although the Eleventh Amendment restricts the ability to obtain money damages from unconsenting States in federal court, they argue that they do not seek recovery of state funds. Rather, Plaintiffs assert they are seeking recovery of federal funds that the State has illegally withheld. [ECF No. 25 at 9]. They only request federal funds to which they claim entitlement and no outlays from the State is necessary. Accordingly, they contend that the Eleventh Amendment is not a bar.

Plaintiffs further claim that, notwithstanding the designation of the funds as state or federal, the Eleventh Amendment is not applicable because they are seeking prospective injunctive relief. Pointing to what is known as the *Ex parte Young* exception to the Eleventh Amendment, they contend that a federal court has authority to enjoin state officials to require they conform their future conduct with federal law. Specifically, Plaintiffs argue that they were not provided with adequate notice and an opportunity to be heard before Defendants terminated the unemployment insurance benefits. Thus, the Court could adopt "a prospective notice remedy ordering Defendants to provide proper notice and opportunity to appeal." [ECF No. 25 at 10]. According to Plaintiffs, such an order would have the effect of requiring Defendants to conform their conduct to due process requirements of the United States Constitution.

They argue that the Court could also enjoin Defendants to conform their future conduct to federal law by accepting the federal funds and sending it to those individuals eligible for the benefits. This would essentially be an act of "releasing" the funds to the beneficiaries under federal law. Plaintiffs characterize Defendants as "blocking and interfering with the relief to which Iowans are entitled under both federal and state law." [ECF No. 25 at 11].

Plaintiffs' argument fails on several fronts. First, the Amended Complaint does not seek an injunction in Count I. [ECF No. 11 at 35] (praying for compensatory damages, liquidated damages, attorney's fees and costs, and pre- and post-judgment interest). Only Count III identifies injunctive relief.

Second, the relief described by Plaintiffs is not injunctive relief under *Ex parte Young*. The exception under *Ex parte Young* recognizes that sovereign immunity does not bar a plaintiff from obtaining an injunction against state officers in their individual capacities based on ongoing violations of federal law. *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131 (8th

-12-

Cir. 2019) (citation omitted).  The prospective relief authorized by *Ex parte Young* is based on the principle that "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011).  The exception to sovereign immunity is limited to "cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan v. Allain*, 478 U.S. 265, 277−78 (1986).  The Supreme Court has explained, "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68 (1997) (cleaned up)).

A plaintiff in the United States District Court for the Middle District of Tennessee brought identical claims as here, but the court there held that the relief sought was retroactive, not prospective.  *Moss v. Lee*, No. 3:21-cv-00561, 2022 WL 68388, at *4 *(M.D. Tenn. Jan. 6, 2022) (holding that the decision by state officials to terminate the pandemic-related unemployment benefits was a one-time past act.  The plaintiffs' request for injunctive relief was not forward-looking but were "nothing more than retroactive monetary reimbursement.").  That reasoning is fully applicable here.  Plaintiffs' characterization that the relief sought is prospective is unavailing.  They cannot simply redesignate a request for monetary relief to evade the Eleventh Amendment. *See EEE Minerals, LLC v. North Dakota*, 81 F.4th 809, 816 (8th Cir. 2023) (holding that a plaintiff "simply repackage[d] her claim for monetary relief as a request for an injunction that cures past

injuries and requires the payment of just compensation. This reformulated request for retrospective relief is likewise barred by the Eleventh Amendment.").

### 3.  Claim under the Takings Clause and the Due Process Clause

Defendants argue that Plaintiffs have not pled a plausible constitutional violation, so the Section 1983 claim brought against Governor Reynolds and Townsend in their individuals capacities must be dismissed. They advance the position that Plaintiffs cannot establish a property right to the benefits, therefore, no process was due and no taking occurred.

Plaintiffs respond that they were entitled to the pandemic-related benefits for a defined period of time, as reflected in their eligibility letters. The letters noticing them of their eligibility for benefits through September 4, 2021, "created an entitlement to these benefits." [ECF No. 25 at 13]. Accordingly, they argue that Defendants had an obligation to provide them process before termination, such as effective notice and opportunity to be heard. Plaintiffs maintain that it is irrelevant that the benefits had not yet been paid because a property interest had already been created by the eligibility letters.

### a.  Takings Clause Standard

The Fifth Amendment prohibits the government from taking "private property" for "public use" without paying the property owner "just compensation." U.S. Const. amend. V. To maintain a claim under the Takings Clause, a plaintiff must first establish a property interest protected by the Constitution. *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 439 (8th Cir. 2007). The Takings Clause does not define what constitutes property. *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998). Therefore, whether a person has a property interest "is determined by reference to existing rules or understandings that stem from an independent source

such as state law." *Id*. (finding that "existing rules or understandings" are drawn on for the definition of a property interest).

b. Due Process Clause Standard

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.[4] "The Fourteenth Amendment's Due Process Clause protects against deprivations of life, liberty, or property." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Plaintiffs do not allege whether they ground their due process claim in substantive or procedural protections.

The substantive component of the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion) (citation omitted). Substantive due process "protects individual liberties from government action 'regardless of the fairness of the procedures used to implement them." *Mitchell v. Dakota Cnty. Soc. Servs.*, 959 F.3d 887, 898 (8th Cir. 2020) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)). A violation of substantive due process requires that the complained-of state conduct must have been "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Braun v. Burke*, 983 F.3d 999, 1002 (8th Cir. 2020). Given the nature of the allegations in the Amended Complaint, the Court construes Plaintiffs' due process claim as based on procedural protections.[5]

---

[4] Plaintiffs cite to the Fifth Amendment to the United States Constitution for their due process claim. The Due Process Clause of the Fifth Amendment applies to the federal government. The Due Process Clause of the Fourteenth Amendment contains nearly identical language to its counterpart, and applies to the States by its express terms.

[5] Even if Plaintiffs were advancing a substantive due process violation, it is plainly without merit. The Amended Complaint alleges no fundamental right violation and the decision to terminate the pandemic-related unemployment insurance benefits after COVID-19 vaccines became widely available do not "shock the conscience."

A claim asserting violation of procedural due process "consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). An individual cannot be deprived of a property interest without "constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). This will often take the form of "a hearing before an impartial decisionmaker" that is "provided at a meaningful time, and in a meaningful manner." *Booker v. City of St. Paul*, 762 F.3d 730, 734 (8th Cir. 2014) (quoting *Coleman v. Watt*, 40 F.3d 255, 260 (8th Cir. 1994)). For their due process claim, Plaintiffs must first "establish a property interest. *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citation omitted). The existence of a property interest is essential to the takings claim and due process claim.

c.   Existence of Property Interest

Defendants argue that Plaintiffs cannot assert a property interest in the pandemic-related unemployment insurance benefits for two reasons. First, they point out that Plaintiffs never had physical possession of the benefits, *i.e.*, the funds had never been issued to them. This is critical because the crux of their constitutional claims is that Plaintiffs were denied future payments—despite the fact that eligibility for unemployment insurance benefits in Iowa are determined on a weekly basis. *See* Iowa Code § 96.3; Iowa Admin. Code 871-24.2 (describing the procedure for a claimant to request unemployment insurance benefits).

Defendants next contend that Plaintiffs have not sufficiently alleged that the property interest they assert is protected by the Takings Clause. They argue that Plaintiffs' own allegations state that the funds are derived from the federal government and the State's role in its disbursement is essentially "a pass-through" to eligible recipients as determined by IWD. Accordingly,

Defendants urge that the State could not "take" any property from Plaintiffs because it remained in the federal trust fund.

Plaintiffs respond that the Supreme Court has rejected the assertion that a property interest entitled to constitutional protection is limited to "actual ownership of real estate, chattels or money." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571–78 (1972) (citation omitted). In this case, Plaintiffs contend that they had a statutory entitlement to federal pandemic-related unemployment benefits for a defined timeframe. They point to the letters they received which stated that their benefits would continue through September 4, 2021, when the federal programs were set to expire. In Plaintiffs' view, this awarded them benefits throughout the duration of the timeframe as set forth in the letter and "created an entitlement to these benefits." [ECF No. 25 at 13]. They contend that it is irrelevant for Takings Clause purposes whether the funds had been disbursed to them, because such benefits "are a matter of statutory entitlement for persons qualified to receive them." *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970).

Plaintiffs argue that Defendants are "flatly incorrect" that they did not have a property interest in pandemic unemployment insurance benefits. They reject the substantial persuasive case law to the contrary, insisting that none of the plaintiffs in the other cases received a letter "awarding them benefits and setting forth their entitlement to benefits through a date certain as Defendants did in this case." [ECF No. 25 at 14]. Plaintiffs contend that Defendants cannot validly assert that the State did not "take" anything from them for a public purpose because "those are fact determinations." *Id*. at 15. They argue that if Defendants were merely "a pass-through" their conduct is "all the worse because the Defendants then will have unapologetically trespassed and withheld from Iowans money that the federal government gave to them, stealing hundreds of

millions of dollars from the Iowa economy and devastating business and individual revenue[.]"
[ECF No. 25 at 15].

Plaintiffs' argument is not persuasive, they did not have a continuing, constitutionally-
protected property interest in the pandemic-related unemployment insurance benefits. Despite
their repeated assertion that the pandemic-related unemployment insurance benefits bestowed a
statutory entitlement, they can point to no language in the CARES Act to support their position.
Numerous federal courts have concluded that the pandemic-related unemployment benefits were
not a property interest.[6] Plaintiffs dismiss this persuasive authority as "nothing more than red
herrings" because it does not involve the same conduct alleged here. [ECF No. 25 at 14].
According to them, none of those cases involved individual letters like the ones issued to Plaintiffs.
However, Plaintiffs fail to address the primary issue of whether they had a constitutionally
protected property interest in the benefits under the CARES Act.

The Supreme Court has rejected the notion that every government benefit is a property
interest of its recipient. Rather, a person must have "a legitimate claim of entitlement to it." *Roth*,
408 U.S. at 577 (holding that a person must have more than a need, desire, or "unilateral
expectation" of a benefit to constitute a protected property interest). Furthermore, a government
benefit is not a "protected entitlement if government officials may grant or deny it in their
discretion." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005). This is fatal to
Plaintiffs' claim of a legal entitlement to the benefits. By its express terms, the CARES Act

---

[6] *See Moss*, 2022 WL 68388, at *6; *Sterling v. Feek*, CASE NO. 3:22-cv-05250, 2023 WL
5718163, at *4 (W.D. Wash. Sept. 5, 2023); *Jackson v. Daniel*, Case No. 1:21-cv-1107-LY-SH,
2022 WL 1157656, at *4 (W.D. Tex. Apr. 18, 2022); *Winter v. N.M. Dep't of Workforce Sols.*,
Civ. No. 21-475 JFR/SCY, 2022 WL 4132740, at *7 (D. N.M. Sept. 12, 2022); *Dickerson v. Texas*,
Case No. H-21-2729, 2021 WL 4192740, at *2–3 (S.D. Tex. Sept. 15, 2021).

permitted state officials to terminate participation in the program upon 30 days' notice.  15 U.S.C. § 9023(a).

Plaintiffs unpersuasively attempt to distinguish prior case law on the basis of the letter they received outlining their eligibility for the benefits.  First, eligibility for unemployment insurance benefits are determined weekly in Iowa, which was not altered by the CARES Act.  Iowa Code §96.3; Iowa Admin. Code 871-24.2.  Accordingly, Plaintiffs could not have had "entitlements to benefits through a date certain" if there were other contingent factors.  [ECF No. 25 at 14].

Second, they provide no authority to support their position that a letter from a state executive agency can create a constitutionally-protected property right in the receipt of federal funds.  The letter is not attached to the pleadings but the Amended Complaint alleges that the "eligibility letters stated that these benefits would continue through September 4, 2021." [ECF No. 11 ¶¶ 93, 171].  Plaintiffs' conclusory assertion that this created an entitlement "for a set period of time" is not supported.  [ECF No. 25 at 13].  If every eligible recipient who received the letter had a property interest, then the discretion given to state official by the CARES Act would be without effect.

Plaintiffs do not cite to a single case in which a state or federal court has found that a recipient has a property interest in CARES Act benefits.  Other courts have previously observed the same consensus.  *Winter*, 2022 WL 4132740, at *7 (echoing an observation in *Moss* that no "court has found a property interest to exist in CARES Act benefits").  There was no property interest created by the CARES Act.  Accordingly, Plaintiffs' claim under Takings Clause and the Due Process Clause must be dismissed.

*C.  Chapter 96*

Count II of the Amended Complaint brings a claim under Iowa Code Chapter 96.  Plaintiffs allege that the decision to end the pandemic-related unemployment insurance benefits violated Chapter 96 of the Iowa Code which governs the state's unemployment insurance program.  They draw on two provisions of the statute to support their argument.  Iowa Code Section 96.2 sets forth what Plaintiffs describe as "a guide to interpretation" for the public policy they seek to vindicate in this case:

> Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state. Involuntary unemployment is therefore a subject of general interest and concern which requires appropriate action by the legislature to prevent its spread and to lighten its burden which now so often falls with crushing force upon the unemployed worker and the worker's family. The achievement of social security requires protection against this greatest hazard of our economic life. This can be provided by encouraging employers to provide more stable employment and by the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment, thus maintaining purchasing power and limiting the serious social consequences of poor relief assistance. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

Iowa Code § 96.2.  In order to achieve the policy goal reflected in Section 96.2, Plaintiffs claim that Iowa Code Section 96.11 imposed mandates on the state government and IWD, in particular:

> shall cooperate with the United States department of labor to the fullest extent consistent with the provisions of this chapter, and shall take such action, through the adoption of appropriate rules, regulations, administrative methods, and standards, as may be necessary to secure to this state and its citizens all advantages available under the provisions of the Social Security Act that relate to unemployment compensation, the federal Unemployment Tax

> Act, the Wagner-Peyser Act, and the Federal-State Extended
> Unemployment Compensation Act of 1970.

*Id*. § 96.11(10)(a). According to the Amended Complaint, Iowa Code Section 96.11(10)(a) mandates that IWD secure for Iowa residents all the rights and benefits conferred by federal unemployment insurance programs under the Social Security Act and—by extension—the CARES Act. By terminating Iowa's participation in the pandemic-related unemployment insurance benefit programs, Plaintiffs argue that Defendants violated Chapter 96's dictates.

Defendants move to dismiss Count II. They first argue that Chapter 96 does not contain a private right of action. Next, Defendants assert that even if there were a private right of action under the statute, it is barred by sovereign immunity and Eleventh Amendment immunity. They further claim they are immune from any claim under Chapter 96 as a discretionary function. And finally, Defendants maintain that they did not violate Chapter 96.

Plaintiffs resists the request to dismiss Count II. They argue that Chapter 96 does create a private cause of action. Plaintiffs assert that the State has waived sovereign immunity for equitable claims under Chapter 96 through the Iowa Tort Claims Act and discretionary function immunity is inapplicable because Chapter 96 removes executive discretion. Finally, they read Chapter 96 as mandating the state's participation in the CARES Act, meaning that the decision to terminate the additional funds violated the law.

### 1.  Private right of action

In support of their position that Chapter 96 creates a private right of action, Plaintiffs point to Iowa Code Section 96.17 which provides:

> [i]n any civil action to enforce the provisions of this chapter, the department and the state may be represented by any qualified attorney who is a regular salaried employee of the department and is designated by it for this purpose or, at the department's request, by the attorney general.

Iowa Code § 96.17(1).  Plaintiffs argue that it would be illogical to conclude there was no private right of action under Chapter 96 in light of this provision, because it defines who may represent the agency in a court proceeding under the Chapter.  They contend that there would be no need for such a provision if a private right of action were not contemplated by the statute.  In other words, it would be a superfluous provision.  Plaintiffs urge the Court to not "ignore the plain language" of Section 96.17.  [ECF No. 25 at 17].

Defendants contend that enforcement by private citizens of Chapter 96 is limited to the judicial review processes of Iowa Code Chapter 17A.  Accordingly, any private right of action beyond judicial review would have to be implied by the statute.  Defendants argue that none of the factors relied upon by Iowa courts to ascertain an implied private right of action is present in this case.

When a state statute does not expressly create a private cause of action, a court must consider whether it is implied.  *Behlmann v. Century Sur. Co.*, 794 F.3d 960, 963 (8th Cir. 2015) (applying a state's specific rules of statutory construction when interpreting a state law).  The "central inquiry" in the analysis is whether the legislature intended to create a right to sue by private individuals.  *Shumate v. Drake Univ.*, 846 N.W.2d 503, 509 (Iowa 2014).  This means that the legislature must have intended not only "a private right but also a private remedy."  *Id.* (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).

The Iowa Supreme Court has outlined an analysis to determine whether the legislature intended to create a private right of action.  *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 38 (Iowa 1982).  A court must consider:

> (1) Is the plaintiff a member of the class for whose benefit the statute was enacted?

(2) Is there any indication of legislative intent, explicit or implicit, to create or deny such a remedy?

(3) Would allowing such a cause of action be consistent with the underlying purpose of the legislation; and

(4) Would the private cause of action intrude into an area over which the federal government or a state administrative agency holds exclusive jurisdiction?

*King v. State*, 818 N.W.2d 1, 34 (Iowa 2012).  All four factors must weigh in favor of a private right of action before a court may conclude one is implied.  *Id.* (citing *Stotts v. Eveleth*, 688 N.W.2d 803, 808 (Iowa 2004)).  Defendants argue that, assuming Plaintiffs satisfy the first factor, the other three factors are not met.  The Court agrees.

First, there does not appear to be any legislative intent to create a private right of action under Chapter 96.  This is supported by the fact that the legislature did create a procedural mechanism for a claimant to litigate a claim under the statute—judicial review under Chapter 17A.  This process is available to an aggrieved claimant as laid out in detail in Iowa Code Section 96.6.  A claimant is permitted a hearing before an administrative law judge conducted pursuant to Chapter 17A, relating to hearings for contested cases.  Iowa Code § 96.6(3).  After an initial determination, a party may then appeal to an administrative law judge employed by the Iowa Department of Inspections and Appeals, the Iowa Employment Appeal Board, or a decision may be appealed "directly to the district court."  *Id.*  Chapter 17A provides that "the judicial review provisions of this chapter shall be the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of such agency action."  Iowa Code § 17A.19.  Such a statutory scheme weighs heavily against a determination that the legislature implied a private right of action brought directly under the statute.

Second, Defendants argue that allowing private lawsuits brought directly under Chapter 96 would undermine the purpose of the statute, which is to administer the state's unemployment insurance program efficiently. This is persuasive because the comprehensive statutory scheme would be substantially frustrated if a court were to recognize that an aggrieved party could bypass it entirely and file a lawsuit directly in district court.

Finally, Defendants urge that a private right of action would undermine IWD's exclusive jurisdiction to make findings about an individual's eligibility for unemployment insurance benefits. The Court agrees that a private right of action would undermine Chapter 96's scheme. A party dissatisfied with a benefits determination would be able to file directly in district court without following any of the statutorily-mandated processes. In an attempt to preserve Count II, Plaintiffs argue that a cause of action may be brought for violation of Chapter 96 under Iowa Code Chapter 17A or federal law. Neither source of law will allow them to maintain Count II.

First, Chapter 17A provides for judicial review of certain state administrative agency decisions. Plaintiffs point out that Smith submitted a petition for a declaratory order to IWD on November 4, 2021, seeking a determination of her statutory unemployment benefits rights. [ECF No. 11 ¶ 45]. IWD declined to issue the request declaratory order in a letter dated December 22, 2021. *Id.* ¶ 46. Therefore, Plaintiffs contend that they may seek judicial review of the denial of the petition. *See* Iowa Code § 17.A.9(8) (providing that if "a petition for a declaratory order is deemed denied or an agency declines to issue a declaratory order" a party may seek judicial review of its denial or declination). However, Iowa law requires that the venue for a judicial review proceeding must be located "either in Polk county district court or in the district court for the county in which the petitioner resides or has its principal place of business." *Id.* § 17A.19(2). There is nothing to indicate that this Court may properly exercise jurisdiction.

-24-

Alternatively, Plaintiffs point to federal law in support of their cause of action.  As pled in Count III, they contend that the Court has authority to resolve "a dispute of rights, status, and legal relations between Plaintiffs and Defendants" pursuant to the Declaratory Judgment Act and Federal Rule of Civil Procedure 57.  [ECF No. 11 ¶ 214].  The Court finds this contention without merit, as will be discussed in more detail below.  In summary, the Court holds that Count II of the Amended Complaint must be dismissed for failure to state a claim.  Plaintiffs have not identified a cause of action which would allow them to proceed on a claim brought directly under Chapter 96.

### D.  Declaratory Judgment

Count III of the Amended Complaint seeks declaratory judgment regarding whether Defendants are required to "secure all possible federal pandemic-related unemployment benefits available to unemployed Iowans that are conferred by the unemployment provisions of the Social Security Act."  *Id.* ¶ 215.  Plaintiffs allege that declaratory judgment "is needed to establish Plaintiffs' and Defendants' legal rights and obligations with respect" to the decision to terminate the CARES Act unemployment benefits.  *Id.* ¶ 217.  They request an injunction ordering the State to accept the pandemic-related unemployment insurance benefits and disburse them to the putative class members.

The Declaratory Judgment Act provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  It is well established that the Declaratory Judgment Act is procedural, not jurisdictional, and does not independently confer jurisdiction on federal courts.  *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (citation omitted); *California v. Texas*, 593 U.S. 659, 672 (2021) ("The Declaratory Judgment Act . . . alone does not provide a court with jurisdiction").  A declaratory remedy "is meant to define the legal rights and

obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act." *Justice Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019).

Primarily for the reasons discussed above, Plaintiffs cannot maintain a declaratory judgment action. First, they have not stated a valid claim for relief under Section 1983 or Iowa Code Chapter 96. The Declaratory Judgment Act does not empower a federal court to simply declare that Plaintiffs are entitled to benefits at issue, untethered to an underlying legal claim.

Plaintiffs are incorrect to argue that although Chapter 96 does not contain a private right of action, the Court at least "has the authority to grant declaratory relief under Chapter 96." The Court has no authority to order "state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (opining that "it is difficult to think of a greater intrusion on state sovereignty" than a federal court instructing state officials on the dictates of state law). The Declaratory Judgment Act "does not extend the jurisdiction of federal district courts. It simply expands 'the range of remedies available in the federal courts.'" *Smith v. U.S. Dep't of Agric.*, 888 F. Supp. 2d 945, 953 (S.D. Iowa 2012) (quoting *Skelly Oil*, 339 U.S. at 671).

Plaintiffs' request for injunctive relief applies to past conduct, not ongoing or future action. An injunction cannot remedy past harm. *CDI Energy Servs. v. West River Pumps, Inc.*, 567 F.3d 398, 403 (8th Cir. 2009) (holding that an injunction is not appropriate when it will not prevent additional harm to the plaintiff). Any alleged violation of the law occurred nearly three years ago when Iowa announced its intent to withdraw from the pandemic-related unemployment program. As Defendants point out, if Plaintiffs desired an injunction to prevent the State from withdrawing its participation, they had an opportunity during the 30-day notice period required by the CARES Act. The request for an injunction untimely.

-26-

III.   CONCLUSION

For the reasons discussed above, the Motion to Dismiss is GRANTED.  [ECF No. 12].

Defendants' motion to dismiss the original complaint is MOOT.  [ECF No. 5].

IT IS SO ORDERED.

Dated this 10th day of May, 2024.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT